UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Law Offices of Daniel C. Flint,
P.C.,

    Plaintiff,

v.                                                                                                   Case No.  15-13006

Bank of America, N.A.,                                                             Honorable Sean F. Cox

    Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS**

    Plaintiff Law Offices of Daniel C. Flint ("Plaintiff") filed this class action against Defendant Bank of America ("BOA") asserting several counts relating to BOA's alleged unconscionable overdraft policies and practices.  The matter is currently before the Court on BOA's Motion to Compel Arbitration.  The motion has been fully briefed and the Court entertained oral argument as to this motion on March 24, 2016.  For the reasons set forth below, the Court shall **GRANT** Defendant's Motion to Compel and Stay Proceedings.

## BACKGROUND

**A.**    **Factual Background**

    In support of its Motion to Compel Arbitration, BOA submitted a Declaration from Willard Andrew Barr, employed as Senior Vice President for BOA.  (Ex. 1 to Def.'s Br., Barr's Decl.).

    Barr's Declaration states that, in March 2012, Plaintiff opened a new business deposit

1

account at a Bank of America branch in Michigan. (Barr's Decl. ¶ 4). According to Barr, "the Bank's normal practice is to provide the holder of a new deposit account, including the holder of a new business deposit account, with a packet of materials applicable to the new account." *Id.* ¶ 5. The Bank's Deposit Agreement and Disclosures (the "Deposit Agreement") are among the documents contained within the provided packet. *Id.* On March 29, 2012, Daniel C. Flint, Plaintiff's CEO, signed a corporate signature card. *Id.* ¶ 6. Right above Flint's signature, the document reads, in pertinent part, "**that deposit accounts... be opened and maintained in the name of this Corporation with Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures** and the applicable rules and regulations for such accounts..." (Ex. F. to Barr's Decl., Signature Card) (emphasis added). Accordingly, the Deposit Agreement and other account opening documents formed the basis of the contract between Plaintiff and BOA.

Since March 2012, the Deposit Agreement governing Plaintiff's account with BOA has been modified four times. (Barr's Decl. ¶¶ 7–10). However, the Deposit Agreement of March 1, 2012, which became applicable to Plaintiff's account on the date it was opened (Ex. A to Barr's Decl.), and the four subsequent Deposit Agreements (Ex. B-E to Barr's Decl.), which became applicable to Plaintiff's account on their effective dates, contained no substantive changes to the provisions at issue here. (Barr's Decl. ¶ 11).

  1.  **Deposit Agreement's Arbitration Clause**

At all relevant times, the governing Deposit Agreement contained the same arbitration clause and waiver provision.

The Deposit Agreement's arbitration clause can be found in its Resolving Claims section, which states, in pertinent part:

**Resolving Claims**

If you and we are not able to resolve a claim ourselves, then you and we agree that the claim will be resolved as provided in this Resolving Claims section. This is a dispute resolution provision. Please read carefully.

**What Does Claim Mean?**

*Claim means any claim, dispute or controversy* (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief) *by either you or us against the other,* or against the employees or agents of the other*, arising from or relating in any way to this deposit agreement* (including any renewals, extensions or modifications) *or the deposit relationship between us.*

. . . .

**How Claims on Business Accounts will be Resolved**

*You have the right to compel us at your option, and we have the right to compel you at our option, to resolve a Claim relating to a business account by binding arbitration.* If neither you nor we decide to compel arbitration, then the Claim will be resolved in court by a judge without a jury, as permitted by law... The arbitration, judicial reference or trial by a judge will take place on an individual basis *without resort to any form of class or representative action.*

(Deposit Agreement, at 43-44) (emphasis added in italics only, bold text in original).

 2. **Deposit Agreement's Class Action and Jury Trial Waiver**

The Deposit Agreement also provides, in bold and capital letters, that BOA and its business account holders are precluded from class-wide and jury trial resolution of claims:

> **CLASS ACTION AND JURY TRIAL WAIVER FOR BUSINESS ACCOUNTS**
>
> **FOR BUSINESS ACCOUNTS, YOU AND WE AGREE AND UNDERSTAND: (1) THAT YOU AND WE ARE BOTH GIVING UP THE RIGHT TO TRIAL BY JURY, AND (2) THAT THIS SECTION PRECLUDES YOU AND US FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION OR JOINING OR CONSOLIDATING THE CLAIMS OF OTHER PERSONS.**

>**THIS IS A CLASS ACTION WAIVER AND JURY TRIAL WAIVER.**
>
>. . . .
>
>**For business Accounts**... You and we acknowledge and agree that under no circumstances will a class action be arbitrated.

(Deposit Agreement, at 43-45) (bold and capital text in original).

>    3.    Arbitration Clause Contains Delegation Provisions

The section also contains the following delegation provisions:

>**Arbitration**
>
>This section on arbitration applies to business accounts and is subject to the provisions of the Limitation and Non-Severability section below.
>
>. . . .
>
>The arbitrator, sitting alone without a jury, will decide questions of law and fact and will resolve the Claim. *This includes the applicability of this Resolving Claims section and the validity of the deposit agreement*, except that the arbitrator may not decide or resolve any Claim challenging the validity of the class action and jury trial waiver. *The validity of the class action and jury waiver will be decided only by a judicial referee or a court.*
>
>. . . .
>
>The arbitration of any matter involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA")...
>
>. . . .
>
>**For both personal and business accounts.** Regardless of anything else in this Resolving Claims section, you and we both acknowledge and agree that the *validity and effect of the class action and jury trial waiver for business accounts* and the jury trial waiver for personal accounts *may be determined only by a court* or judicial referee and not by an arbitrator.

*Id.* at 44-45 (emphasis added in italics only, bold text in original).

Accordingly, the Deposit Agreement delegates to the arbitrator the task of resolving

4

issues pertaining to the applicability of the Resolving Claims section and the validity of the deposit agreement, while reserving for the court the task of resolving issues pertaining to the waiver provisions. *Id*.

**B.     Procedural Background**

Plaintiff filed this class action on August 25, 2015, alleging the following claims: Count I – Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing; Count II – Unconscionability; Count III – Statutory Conversion; Count IV – Unjust Enrichment; and Count V – Violations of State Unfair Trade Practice Laws. (Docket Entry No. 1, Compl.). Plaintiff's claims pertain to BOA's assessment of overdraft fees on business deposit accounts. Plaintiff alleges that BOA utilizes a system that "intentionally maximizes the number of overdrafts in order to charge each business customer the maximum amount of fees." *Id.* at ¶ 11.

In its Complaint, Plaintiff references the Deposit Agreement governing its relationship with BOA. *Id.* at ¶¶ 22, 25. In alleging breach of contract against BOA, Plaintiff maintains that it has performed all, or substantially all, of the obligations under the Deposit Agreement. *Id.* at ¶ 25. However, the Complaint makes no mention of the arbitration clause, the delegation provision, or the class action waiver contained within the Deposit Agreement.

BOA filed its "Motion to Compel Arbitration and Stay Proceedings on October 19, 2015. (Docket Entry No. 5). The motion has been fully briefed by the parties and oral argument as to the motion was heard on March 24, 2016.

5

## APPLICABLE STANDARDS

Federal courts apply state law to determine whether contract defenses may invalidate arbitration agreements. *See Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996). Federal substantive law, however, governs questions pertaining to the interpretation and construction of arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 (1983). The burden is on the party opposing arbitration to show that the agreement is not enforceable. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000).

## ANALYSIS

BOA seeks to enforce the delegation provision and class action and jury trial waiver contained in the Deposit Agreement between Plaintiff and BOA. It maintains that the only issues properly before the Court are: 1) whether the delegation provision in the arbitration clause is valid and enforceable; and 2) whether the waiver provision is valid and enforceable. (Docket Entry No. 5, Def.'s Motion Br. at 9, 13).

Plaintiff claims that "the issue of the validity of the arbitration clause, including the class action and jury trial waiver, is one that is properly before this Honorable Court." (Docket Entry No. 12, Pl.'s Resp. Br. at 7).

For the reasons below, the Court shall limit its discussion to the issues as they are properly presented by BOA.

A.     **The FAA Generally**

BOA's motion relies on the Federal Arbitration Act ("FAA"), § 9 U.S.C. 1 *et seq.*, which provides that a written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The Supreme Court has recognized that the FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "To enforce this dictate, the Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch*, 315 F.3d at 624 (citing 9 U.S.C. §§ 3 and 4).

"Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002). That section provides, in pertinent part, that:

> [a] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "Thus, '[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue.'" *Great*

*Earth Companies, Inc.*, 288 F.3d at 889 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Id*.

But, "[b]efore compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning [1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624 (citations omitted). Here, the second prong of the above analysis is undisputed. Plaintiff only contests the validity of the arbitration clause, asserting that the clause is invalid and unconscionable.

A party may contest an arbitration agreement in one of two ways. The first type of challenge seeks to invalidate the underlying contract in its entirety, while the second type of challenge seeks to invalidate the arbitration clause specifically. Because arbitration agreements are separable from the underlying contract, "attacks on the validity of an entire contract [are] distinct from attacks aimed at the arbitration clause." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co,*., 388 U.S. 395, 403-04 (1967)); *see also Prima Paint Corp.*, 388 U.S. at 402 ("arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud."). Accordingly, an arbitrator is tasked with resolving claims against the entire contract, while claims against the validity of the arbitration clause will be reserved for the court. *Prima Paint*

*Corp.*, 388 U.S. at 402-04.

### 1. Arbitration Agreement At Issue Here Contains A Delegation Provision

With Plaintiff's argument so framed, the Court would typically be tasked with determining the validity of the arbitration agreement. However, where an arbitration clause contains a delegation provision, the analysis is different. Here, BOA seeks to enforce a provision in the Deposit Agreement that reserves for the arbitrator any challenges against "the applicability of this Resolving Claims section [arbitration clause] and the validity of the deposit agreement..." (Deposit Agreement, at 44). Thus, "unless [Plaintiff] challenged the delegation provision ***specifically***," the arbitrator, and not the Court, must adjudicate the validity of the arbitration provision. *Rent-A-Center*, 561 U.S. at 72 (emphasis added).

Relevant to the Court's discussion here is the Supreme Court's decision in *Rent-A-Center*. There, the contract at issue required that all disputes arising from the employment relationship be arbitrated. *Id.* at 65-66. The arbitration clause also contained a delegation provision. *Id.* The issues before the Supreme Court in *Rent-A-Center* mirror the issues presently before the Court here: the plaintiff opposed arbitration, asserting that the arbitration clause was unconscionable; and the defendant argued that, in light of the delegation provision, the issue of the arbitration clause's validity was not properly before the court.

In resolving the issues before it, the Supreme Court extended the separability rule advanced in *Prima Paint Corp*. to delegation provisions within arbitration agreements. The Court treated the arbitration agreement as though it contained two separate arbitration provisions rather than one. The Court explained that the arbitration agreement: "[first, provides] for arbitration of all disputes arising out of [plaintiff's] employment... and [second, gives] the

'Arbitrator... exclusive authority to resolve any dispute relating to the [Agreement's] enforceability... including... any claim that all or any part of this Agreement is void or voidable.'" *Id.* at 63. Because the plaintiff in *Rent-A-Center* had not challenged the validity of the delegation provision specifically, the Court concluded that the provision was enforceable, notwithstanding the plaintiff's unconscionability claim against the arbitration clause as a whole. *Id.* at 72.

Up until the Court's decision in *Rent-A-Center*, the relationship between a contract and the arbitration clause contained therein was twofold: first there was the arbitration clause, and then there was the rest of the contract. Each was separate and distinct from the other and challenges targeting either of the above would be reserved for court and the arbitrator, respectively. However, *Rent-A-Center* has changed the way courts now approach claims against arbitration:

> Post-*Rent-A-Center*, the line has shifted. Now, the same contract, if it contains a delegation clause, is divided into: (1) the delegation clause; (2) the rest of the contract. Under this new system, if the contract contains a delegation clause, *courts decide only if the delegation clause is valid and enforceable*. Arbitrators decide claims relating to the underlying contract, plus those related to the rest of the arbitration clause.

*Rai v. Ernst & Young, LLP*, No. 09-13194, 2010 WL 3518056, at *4 (E.D. Mich. Sept. 8, 2010) (emphasis added). The Supreme Court recognized that a "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center*, 561 U.S. at 68. The Court cited various cases, which upheld the concept "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* (citations omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party

seeking arbitration asks the federal court to enforce, and the FAA operates on the additional arbitration agreement just as it does on any other." *Id.* at 70. Thus, a delegation provision, being an additional agreement to arbitrate, "is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract...'" *Id.*

        a.       **Proper Question Before The Court: Whether The Delegation Clause is Valid And Enforceable**

Where, as here, an arbitration clause contains a delegation provision, the question properly before the court becomes "whether the ***delegation provision*** is valid under § 2." *Id.* (emphasis added). Just as in *Rent-A-Center*, the written provision that BOA seeks to have the Court enforce is the delegation provision, which entrusts to the arbitrator all questions regarding "the applicability of [the] Resolving Claims section and the validity of the deposit agreement," with the exception of any challenge pertaining to the validity of the waiver provision. Since "Section 2 operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce, [Plaintiff must challenge] the delegation provision specifically" in order for it to be properly before the Court. *Id.* at 72.

        i.       **Because Plaintiff Does Not Challenge The Delegation Clause Specifically, It Remains Valid and Enforceable**

The Court must now examine Plaintiff's claims to determine whether its challenges are directed at the arbitration agreement as a whole, or the delegation provision specifically. If Plaintiff fails to challenge the latter, then the delegation provision remains enforceable and the issue of unconscionability is reserved for arbitration.

Here, Plaintiff contests the validity of the arbitration clause, arguing that it is "undoubtedly unconscionable." (Pl.'s Resp. Br. at 8). Plaintiff asserts that "grounds exist that

are sufficient to deem the arbitration clause, including the class action and jury trial waiver, unenforceable as a matter of law." *Id.* However, Plaintiff's opposition to BOA's motion to compel makes no reference or mention of the delegation provision that BOA seeks to enforce. Like the plaintiff in *Rent-A-Center*, "'[Plaintiff's response] fails to rebut or otherwise address in any way [BOA's] argument that the Arbitrator must decide [Plaintiff's] challenge to the enforceability of the Agreement.'" *Rent-A-Center*, 561 U.S. at 73. Moreover, Plaintiff fails to address *Rent-A-Center*'s holding, the effect of which directly applies to the issues presented here.

As required under Michigan law, Plaintiff argues that the arbitration clause is both procedurally and substantively unconscionable. Plaintiff asserts that it is procedurally unconscionable "because of Plaintiff's complete lack of bargaining power, economic strength and alternative sources." (Pl.'s Resp. at 11). Just as in *Rent-A-Center*, the Court need not consider this claim since none of Plaintiff's substantive unconscionability challenges are specific to the delegation provision.[1]

Plaintiff argues that "substantive unconscionability is satisfied because the challenged term is su[b]stantively unreasonable and relieves BOA of all liability." *Id.* at 14. Plaintiff asserts that:

> the *challenged conduct involves the illegal application of a $35 overdraft fee* – i.e. any damages on an *individual basis* would be extremely low. Consequently, it is highly *unlikely any individual claimant*... would spend the time, money and effort necessary to challenge BOA's unconscionable conduct.

*Id.* at 14-15 (emphasis added). It is clear that the argument advanced here does not go to the

---

[1] However, the Court notes that Plaintiff's procedural unconscionability arguments fail to address the delegation provision specifically, and instead, are directed at the arbitration clause as a whole and the underlying contract generally.

validity of the delegation provision. Rather, it goes toward the validity of the class action waiver, an issue which BOA admits is properly before the Court and will be discussed below. Plaintiff then argues that it "could not proceed on an *individual* basis because it would be unable to bear the costs and fees associated with the *individual* action, *whether by arbitration or not*." *Id.* at 15 (emphasis added). Again, Plaintiff is challenging the validity of the class action waiver, not the delegation provision. Finally, Plaintiff argues that "BOA's liability with regard to Plaintiff as an *individual* is pennies compared to BOA's liability towards the *entire potential class* - which liability is expected to be in the multi-millions of dollars... [w]hen considered in light of these facts, enforcing the arbitration clause at issue would... completely relieve BOA from all liability." *Id.* (emphasis added). This argument fails on the same basis as the arguments above: it does not challenge the validity of the delegation provision specifically.

Because Plaintiff has failed to challenge the delegation provision specifically, BOA's argument that the delegation provision is enforceable remains uncontested.[2] Accordingly, the Court need not reach Plaintiff's unconscionability argument as it pertains to the arbitration clause. The Court "must treat [the delegation provision] as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator." *Rent-A-Center*, 561 U.S. at 72. Thus, Plaintiff may advance its unconscionability argument before the arbitrator.

---

[2] The Court also notes that Plaintiff failed to advance any argument as to the unconscionability of the delegation provision specifically at oral argument.

**B.      The Class Action And Jury Trial Waiver Provision Is Valid and Enforceable**

Pursuant to the governing Deposit Agreement, Plaintiff's challenge against the class action and jury trial waiver provision is properly before the Court. (Deposit Agreement, at 44-45) ("you and we both acknowledge and agree that the validity and effect of the class action and jury trial waiver for business accounts... may be determined only by a court or judicial referee and not by an arbitrator.").

      **1.      Plaintiff Has Not Established Unconscionability**

Plaintiff's position is that the arbitration clause, including the class action and jury trial waiver provision, is unconscionable. The waiver provision at issue states, in relevant part, that: [y]ou and we acknowledge and agree that under no circumstances will a class action be arbitrated. (Deposit Agreement, at 45). Plaintiff asserts that "BOA cannot avoid class-wide liability by attempting to hide behind the FAA..." (Pl.s Resp. Br. at 11). Plaintiff alleges both procedural and substantive unconscionability. For the reasons below, Plaintiff has failed to satisfy the substantive unconscionability prong under Michigan law.[3]

The Michigan Court of Appeals has succinctly set forth the standard for determining whether a contract provision is unconscionable:

> In order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to

---

[3] Because Plaintiff has not shown substantive unconscionability, the Court need not address the arguments advanced in support of procedural unconscionability.

> the other.  Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.

*Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 143-44 (2005).

Plaintiff argues that under Michigan law, a challenged term is substantively unreasonable when it "'relieves the defendant from all liability...'" (Pl.'s Resp. Br. at 14) (quoting *Allen v. Michigan Bell Tel. Co.*, 18 Mich. App. 632, 640 (1969)).  Although Plaintiff does not explicitly state which challenged term relieves BOA of "all liability," the Court presumes that Plaintiff is referring to the class action waiver.

To substantiate the claim that BOA will "essentially avoid all liability," Plaintiff argues that: (1) an individual claimant is unlikely to spend the time, money and effort necessary to challenge BOA's unconscionable conduct when damages on an individual basis are expected to be extremely low; (2) Plaintiff, and all others similarly situated, could not proceed on an individual basis because it would be unable to bear the costs and fees associated with the individual action; (3) Plaintiff, and all others similarly situated, will be financially unable to individually invoke any of their legal or equitable rights; and (4) because "BOA's liability with regard to Plaintiff as an individual is pennies compared to BOA's liability towards the entire potential class...," BOA is "completely relieve[d]... from all liability."  (Pl.'s Resp. Br. at 14-15).

The arguments advanced by Plaintiff in this regard are not persuasive and are not properly fleshed out.  Plaintiff's argument appears to be that under Michigan law, the prevention of class-wide resolution of small claims is substantively unreasonable because it relieves the defendant of all liability.  *Id.*  However, Plaintiff does not make very clear how proceeding individually satisfies the substantive unconscionability prong under Michigan's doctrine.  Nothing in the class

15

action waiver provision prohibits Plaintiff from bringing a claim against BOA. Plaintiff has not challenged a term that actually relieves BOA from liability. Plaintiff does nothing more than make conclusory assertions, which are not substantiated by authority.

Most detrimental to Plaintiff's argument is its failure to acknowledge the Supreme Court decision in *Concepcion*,[4] and the various court decisions that follow. In *Concepcion*, a cell phone provider advertised free phones to customers who subscribed to a certain service plan. *Id.* at 337. The company then charged the customers for the sales tax on the phones, which amounted to $30.22. *Id.* The plaintiffs filed a class action in federal court, asserting state-law claims based upon fraud. *Id.* The defendant filed a motion to compel arbitration under a contractual provision, which forbade class-wide arbitration. *Id.* The plaintiffs opposed the motion, contending that the arbitration agreement was unconscionable under California state law because it did not allow for class-wide resolution of claims. *Id.* at 337-38. Pursuant to California law at the time, class action waivers in arbitration agreements were unconscionable in circumstances involving small consumer claims and allegations of fraud. *Id.* at 340. The Supreme Court upheld the waiver of class arbitration, stating that "because [California's judicial rule] 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" it is preempted by the FAA. *Id.* 352 (internal citations omitted).

Plaintiff has not apprised the Court of one valid reason as to why *Concepcion's* holding should not apply here. The only relevant dissimilarity that strikes the Court between Plaintiff and the plaintiffs in *Concepcion* appears to be the fact that, here, Plaintiff does not rely on a Michigan judicial rule that ***expressly*** forbids class action waivers in arbitration agreements. However, this

---

[4] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

is not outcome determinative. Notably, Plaintiff's argument is that the governing arbitration agreement is unconscionable under Michigan law because it contains a class action waiver. However, while Plaintiff makes this argument, it has not adequately explained how the class action waiver here amounts to substantive unconscionability. Additionally, the reasons advanced by Plaintiff in favor of unconscionability are in contravention with *Concepcion* and other courts that followed suit. For example, in light of *Concepcion*, Plaintiff's argument that it cannot afford to arbitrate its claims individually, thereby rendering the class action waiver unconscionable, is without merit. As the Supreme Court noted: "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration–its informality–and makes the process slower, **more costly**, and more likely to generate procedural morass than final judgment." *Id.* at 348 (emphasis added). Plaintiff's second argument that BOA will be relieved of all liability because claimants are likely to forgo arbitration is also unpersuasive. In *Concepcion*, the Supreme Court considered and rejected the public policy argument that waiver of class arbitration fundamentally results in the exculpation of defendants since individual claimants will not pursue small dollar claims. The Court acknowledged the dissent's argument "that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system[, but concluded that] States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 351.

   A few years after *Concepcion*, the Supreme Court in *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013)[5] reaffirmed the notion that "courts must 'rigorously enforce'

---

[5] Plaintiff mistakenly argues that BOA's reliance on *Italian Colors Restaurant* is misplaced. Plaintiff ignores the reasons underlying the Supreme Court's holding that are relevant to issues presently before the Court.

arbitration agreements according to their terms, including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" *Id.* at 2309 (internal citations omitted). There, the plaintiffs argued, as Plaintiff alludes to here, that "enforcing the waiver of class arbitration bars effective vindication... because they have no economic incentive to pursue their antitrust claims individually in arbitration." *Id.* at 2310. The Court rejected this argument, stating that "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.* at 2311 (citations omitted); see also *Id.* at 2312 (reaffirming that the Supreme Court in *Concepcion* "specifically rejected the argument that class arbitration was necessary to prosecute claims that might otherwise slip through the legal system."). Accordingly, the Supreme Court has squarely rejected Plaintiff's claim that a class action waiver relieves a defendant of all liability. Instead, the Supreme Court's position is that a class action waiver does nothing more than limit "arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief..." *Id.*

In light of *Italian Colors*, the Sixth Circuit has also rejected the argument that an arbitration agreement was unconscionable because it did not permit class-wide arbitration. *Reed Elsevier, Inc. ex Rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 600 (6th Cir. 2013). There, the court admitted that the clause was as one-sided as the plaintiff had alleged. *Id.* However, the court acknowledged "that all of these things–the one sided nature of the arbitration clause, and its adhesive nature–were also present in [*Italian Colors*]. And [there,] the Supreme Court held that, all of those concerns notwithstanding, the absence of a class action right does not render an

18

arbitration agreement unenforceable." *Id.*

For these reasons, the Court finds the class action waiver valid and enforceable.[6]

**C.     Constitutionality Of The FAA**

In its final argument, Plaintiff asserts that "even if [the Court] does not find that the arbitration clause is unconscionable, BOA's Motion must still be denied because it is based upon the FAA, which is unconstitutional and void." (Pl.'s Resp. Br. at 17). Specifically, Plaintiff argues that the waiver provision violates the Seventh Amendment because it denies parties the right to trial by jury. In making its argument, Plaintiff has not cited one case to substantiate its claim. As BOA correctly points out, this argument is without merit.

The waiver here is clear and unambiguous. The Sixth Circuit has acknowledged, that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 506 (6th Cir. 2004) (internal citations and quotations omitted). "The Seventh Amendment confers not the right to a jury trial *per se*, but rather only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Id.* (internal citations and quotations omitted).

---

[6] In addition to the above arguments, Plaintiff mentions that BOA has recently settled a class action dispute with consumer account holders regarding the same overdraft practices at issue here. Plaintiff asserts that granting BOA's motion will deny business account holders the same relief as consumer account holders received. Plaintiff conveniently fails to mention that the waiver provision applicable to personal accounts is not applicable to business accounts. The key difference between the two is that personal account holders are only subject to a jury trial waiver, not a class-action waiver. Accordingly, Plaintiff's argument here is not relevant to the issues before the Court.

**D.     Stay of Proceedings Pending Arbitration**

In light of the above findings, the Court shall grant BOA's request to stay these proceedings pending arbitration. *See Javitch*, 315 F.3d at 624 (the FAA "provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."); *see also* 9 U.S.C. § 3 (when a party establishes that a lawsuit brought in court involves claims covered by an arbitration agreement, the court "shall on application of the one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

## CONCLUSION

For the reasons set forth above, the Court shall **GRANT** Defendant's Motion to Compel Arbitration and Stay Proceedings.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 13, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 13, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager